IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **TAINOAPP, INC.,**<br><br>        Plaintiff,<br><br>    v.<br><br>**PHILIPS ELECTRONICS NORTH AMERICA CORPORATION,**<br><br>        Defendant. | C.A. No.<br><br>**TRIAL BY JURY DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

COMES NOW, Plaintiff TainoApp, Inc., ("TainoApp"), through the undersigned attorneys, and respectfully alleges, states, and prays as follows:

### NATURE OF THE ACTION

1.   This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin defendant Philips Electronics North America Corporation, ("Defendant" or "Philips"), from infringing and profiting from, in an illegal and unauthorized manner and without authorization and/or of the consent from TainoApp, United States Patent Nos. 6,094,676 (the "'676 Patent") and 6,219,710 (the "'710 Patent") (collectively, the "Patents-In-Suit") pursuant to 35 U.S.C. § 271, and to recover damages, attorney's fees, and costs.

### THE PARTIES

2.   Plaintiff TainoApp is a corporation organized under the laws of Puerto Rico having a mailing address at 229 Del Parque St., Suite #1401, San Juan, Puerto Rico 00912.

3.   On information and belief, Defendant is a company organized under the laws of the state of Delaware having a principal place of business at 3000 Minuteman Road, Andover,

MA 01810. Upon information and belief, Defendant may be served with process at Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701.

4. Defendant is in the business of making, using, selling, offering for sale and/or importing consumer electronics that establish communications over a Bluetooth network via NFC.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

6. This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction, including having the right to transact business in Texas, as well as because of the injury to TainoApp, and the cause of action TainoApp has risen, as alleged herein.

7. Defendant is subject to this Court's personal jurisdiction pursuant to due process and/or the Texas Long-Arm Statute, due to at least its substantial business in this forum, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas.

8. Defendant has conducted and does conduct business within the state of Texas, including the geographic region within the Eastern District of Texas, directly or through intermediaries, or offers and advertises (including through the use of interactive web pages with promotional material) products or services, or uses services or products in Texas, including this judicial district, in a manner that infringes the Patents-In-Suit.

9. Venue lies in this District under 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Defendants is subject to personal jurisdiction in this District, and has committed and continues to commit acts of patent infringement in this District. For example, Defendant has used, sold, offered for sale, and/or imported infringing products in this District.

## THE PATENTS-IN-SUIT

10. On July 25, 2000, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '676 Patent, entitled "Method and Apparatus for Peer-To-Peer Communication" after a full and fair examination. TainoApp is presently the owner of the patent and possesses all right, title and interest in and to the '676 Patent. TainoApp owns all rights of recovery under the '676 Patent, including the exclusive right to recover for past infringement. The '676 Patent is valid and enforceable. A copy of the '676 Patent is attached hereto as Exhibit A.

11. On April 17, 2001, the USPTO duly and legally issued the '710 Patent, entitled "Method and Apparatus for Peer-To-Peer Communication" after a full and fair examination. TainoApp is presently the owner of the patent and possesses all right, title and interest in and to the '710 Patent. TainoApp owns all rights of recovery under the '710 Patent, including the exclusive right to recover for past infringement. The '710 Patent is valid and enforceable. A copy of the '710 Patent is attached hereto as Exhibit B.

12. The '676 Patent contains three independent claims and sixteen dependent claims.

13. The '710 Patent contains four independent claims and twenty-one dependent claims.

## DESCRIPTION OF THE ACCUSED INSTRUMENTALITIES

*'676 patent*

14.     Defendant's accused products, including but not limited to the "Philips Bluetooth NFC in-ear headphones (SHB5800)" and those other products by Defendant that include the limitations recited in claim 1 of the Patents-In-Suit (hereinafter "Accused Product"), perform a method of establishing a peer-to-peer communication between an originating unit and a receiving unit over a network channel that identifies communicating units by network address. For example, as explained in its User Manual, the Accused Product includes Bluetooth, which allows the Accused Product to wirelessly connect to a compatible device.[1] Additionally, the Accused Product includes Near Field Communications (NFC) functionality,[2] which allows the Accused Product to initiate a Bluetooth connection by tapping a compatible device, such as a Bluetooth and NFC enabled smartphone (i.e., Audio Source Device (ASD)), to the Accused Product's NFC location. When an operator places the ASD near the NFC tag of the Accused Product, the devices automatically pair via Bluetooth. As such, when used by Defendant or its customers, the Accused Product performs a method of establishing peer-to-peer communication between devices over a Bluetooth network channel that identifies communicating units by network address.

15.     The Accused Product, at least during internal testing, performs the step of sending a message from said originating unit to said receiving unit over a monitor channel. For example, NFC is a standards-based short-range wireless connectivity technology and can be considered a monitor channel. Furthermore, the Accused Product (i.e., the originating unit) and ASD (i.e., the receiving unit) both support the Bluetooth SIG defined mechanism called "Secure Simple Pairing" and in initiating a Bluetooth connection using NFC, the Accused Product sends

---

[1] https://www.download.p4c.philips.com/files/s/shb5800wt_00/shb5800wt_00_dfu_eng.pdf, last visited April 4, 2017.
[2] *Id*.

its Bluetooth Device Address as out-of-bound data (OOB data) to the ASD via NFC (the monitor channel).

16.    The Accused Product, at least during internal testing, performs the step of monitoring a monitor channel by said receiving unit. For example, in order for the ASD to receive OOB data via NFC, the ASD's NFC functionality must be enabled and it must be monitoring the NFC frequency (i.e., the monitor channel).

17.    The Accused Product, at least during internal testing, performs the step of determining information indicative of the identity of at least one of said originating unit and said receiving unit. For example, the ASD (i.e., receiving unit) at least determines information indicative of the identity (Bluetooth Device Address) of the Accused Product (i.e., originating unit) when it receives the Bluetooth OOB data via NFC (i.e., the monitor channel).

18.    The Accused Product, at least during internal testing, performs the step of generating a trigger event in response to at least one of said sending and monitoring steps. For example, after the NFC tags of the ASD and Accused Product are "tapped" together, the Bluetooth pairing process is initiated, which is a trigger event, in response to the exchange of OOB information (in response to at least one of said sending and monitoring steps).

19.    The Accused Product, at least during internal testing, performs a step in which said trigger event includes connecting at least one of said originating unit and said receiving unit to said network channel, thereby establishing a first network address for at least one of said originating unit and said receiving unit. As explained in the Bluetooth specification 3.0,[3] a master (source) repeatedly transmits a paging message consisting of the slave's (destination) device access code in different hop channels. Here, the ASD is the master and the Accused Product is the slave. When the ASD repeatedly transmits the paging message consisting of the

---
[3] https://www.bluetooth.com/specifications/adopted-specifications/legacy-specifications, last visited April 4, 2017.

slave's device access code in different hop channels, the ASD connects to the Bluetooth network channel using the device access code of the Accused Product as a first network address, i.e., establishes a first network address.

20. The Accused Product, at least during internal testing, performs the step of determining said first network address by the other of said originating unit or said receiving unit using the information indicative of the identity of the at least one of said originating unit and said receiving unit. For example, in order to receive the page message from and send a page response message to the ASD (master), the Accused Product (slave) determines the device access code (said first network address) using the lower address part (LAP) of its own Bluetooth Device Address (the information indicative of the identity of the at least one said originating unit and said receiving unit).

21. The Accused Product, at least during internal testing, performs the step of establishing communication between said originating unit and said receiving unit over said network channel using said first network address, in response to said triggering event. For example, after the first network address is used (using said first network address) to complete the pairing process (in response to said triggering event), the ASD and the Accused Product will be paired via Bluetooth (communication is established between said originating unit and said receiving unit over said network channel).

22. The Accused Product performs the steps described in paragraphs 14-21 which are covered by at least claim 1 of the '676 patent.

*'710 patent*

23. The Accused Product performs a method of establishing a peer-to-peer communication between an originating unit and a receiving unit over a network channel that

identifies communicating units by network address. For example, as explained in its Instruction Manual, the Accused Product includes Bluetooth, which allows the Accused Product to wirelessly connect to a compatible device.[4] Additionally, the Accused Product includes NFC functionality,[5] which allows the Accused Product to initiate a Bluetooth connection by tapping a compatible device, such as a Bluetooth and NFC enabled smartphone (i.e., Audio Source Device (ASD)), to the Accused Product's NFC location. When an operator places the ASD near the NFC tag of the Accused Product, the devices automatically pair via Bluetooth. As such, when used by Defendant or its customers, the Accused Product performs a method of establishing peer-to-peer communication between devices over a Bluetooth network channel that identifies communicating units by network address.

24. The Accused Product, at least during internal testing, performs the step of sending a message from said originating unit to said receiving unit over a monitor channel. For example, NFC is a standards-based short-range wireless connectivity technology and can be considered a monitor channel. Furthermore, the Accused Product (i.e., the originating unit) and ASD (i.e., the receiving unit) both support the Bluetooth SIG defined mechanism called "Secure Simple Pairing" and in initiating a Bluetooth connection using NFC, the Accused Product sends its Bluetooth Device Address as OOB data to the ASD via NFC (the monitor channel).

25. The Accused Product, at least during internal testing, performs the step of includes monitoring a monitor channel by said receiving unit. For example, in order for the ASD to receive OOB data via NFC, the ASD's NFC functionality must be enabled and it must be monitoring the NFC frequency (i.e., the monitor channel).

26. The Accused Product, at least during internal testing, performs the step of

---

[4] https://www.download.p4c.philips.com/files/s/shb5800wt_00/shb5800wt_00_dfu_eng.pdf, last visited April 4, 2017.
[5] *Id*.

generating a trigger event in response to at least one of said sending and monitoring steps. For example, after the NFC tags of the ASD and Product are "tapped" together, the Bluetooth pairing process is initiated, which is a trigger event, in response to the exchange of OOB information (in response to at least one of said sending and monitoring steps).

27. The Accused Product, at least during internal testing, performs the step of determining information indicative of a first network address associated with at least one of said originating unit and said receiving unit. As previously discussed, prior to the ASD repeatedly transmitting the paging message consisting of the slave's device access code in different hop channels, the ASD first determines the device access code (first network address) using the LAP of the Accused Product's Bluetooth Device Address.

28. The Accused Product, at least during internal testing, performs the step of establishing communication between said originating unit and said receiving unit over said network channel using said first network address, in response to said triggering event. After the first network address is used (using said first network address) to complete the pairing process (in response to said triggering event), the ASD and the Accused Product will be paired via Bluetooth (communication is established between said originating unit and said receiving unit over said network channel).

29. The Accused Product performs the steps described in paragraphs 23-28 which are covered by at least claim 1 of the '710 patent.

## COUNT I
## (INFRINGEMENT OF THE '676 PATENT)

30. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-29.

31. Defendant, at least during internal testing of the Accused Product, has directly

infringed and continues to directly infringe at least claim 1 of the '676 patent by using the Accused Product in the manner described above without authority in the United States, and will continue to do so unless enjoined by this Court. As a direct and proximate result of Defendant's direct infringement of the '676 patent, Plaintiff has been and continues to be damaged.

32. Defendant has indirectly infringed and continues to indirectly infringe the '676 patent by actively inducing its respective customers and/or end-users to directly infringe at least claim 1 of the '676 patent through their use of the Accused Product. Defendant engaged or will have engaged in such inducement having knowledge of the '676 patent. Furthermore, Defendant knew or should have known that its action would induce direct infringement by others and intended that its actions would induce direct infringement by others. For example, Defendant sells, offers to sell and advertises the Accused Product through websites or retailers that are available in Texas.[6] Furthermore, at least through instruction manuals[7] for the Accused Product, Defendant instructs its customers to directly infringe the '676 patent specifically intending that its customers use the Accused Product in an infringing manner. Additionally, Defendant's customers' use of the Accused Product is facilitated by the use of the methods described in the '676 patent. As a direct and proximate result of Defendant's indirect infringement by inducement of the '676 patent, Plaintiff has been and continues to be damaged.

33. Defendant has had knowledge of its infringement of the '676 Patent at least as of the service of the present complaint.

34. By engaging in the conduct described herein, Defendant has injured TainoApp and is thus liable for infringement of the '676 Patent, pursuant to 35 U.S.C. § 271.

35. Defendant has committed these acts of infringement without license or

---

[6] http://www.usa.philips.com/c-p/SHB5800BK_27/bluetooth-nfc-in-ear-headphones, last visited April 4, 2017.
[7] https://www.download.p4c.philips.com/files/s/shb5800wt_00/shb5800wt_00_dfu_eng.pdf, last visited April 4, 2017.

authorization.

36. To the extent that facts learned in discovery show that Defendant's infringement of the '676 Patent is or has been willful, TainoApp reserves the right to request such a finding at the time of trial.

37. As a result of Defendant's infringement of the '676 Patent, TainoApp has suffered harm and monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

38. TainoApp will continue to suffer harm and damages in the future unless Defendant's infringing activities are enjoined by this Court. As such, TainoApp is entitled to compensation for any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

## COUNT II
## (INFRINGEMENT OF THE '710 PATENT)

39. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-38.

40. Defendant, at least during internal testing of the Accused Product, has directly infringed and continues to directly infringe at least claim 1 of the '710 patent by using the Accused Product in the manner described above without authority in the United States, and will continue to do so unless enjoined by this Court. As a direct and proximate result of Defendant's direct infringement of the '710 patent, Plaintiff has been and continues to be damaged.

41. Defendant has indirectly infringed and continues to indirectly infringe the '710 patent by actively inducing its respective customers and/or end-users to directly infringe at least claim 1 of the '710 patent through their use of the Accused Product. Defendant engaged or will

have engaged in such inducement having knowledge of the '710 patent. Furthermore, Defendant knew or should have known that its action would induce direct infringement by others and intended that its actions would induce direct infringement by others.  For example, Defendant sells, offers to sell and advertises the Accused Product through websites or retailers that are available in Texas.[8] Furthermore, at least through instruction manuals[9] for the Accused Product, Defendant instructs its customers to directly infringe the '710 patent specifically intending that its customers use the Accused Product in an infringing manner. Additionally, Defendant's customers' use of the Accused Product is facilitated by the use of the methods described in the '710 patent. As a direct and proximate result of Defendant's indirect infringement by inducement of the '710 patent, Plaintiff has been and continues to be damaged.

42.     Defendant has had knowledge of their infringement of the '710 Patent at least as of the service of the present complaint.

43.     By engaging in the conduct described herein, Defendant has injured TainoApp and is thus liable for infringement of the '710 Patent, pursuant to 35 U.S.C. §271.

44.     Defendant has committed these acts of infringement without license or authorization.

45.     To the extent that facts learned in discovery show that Defendant's infringement of the '710 Patent is or has been willful, TainoApp reserves the right to request such a finding at the time of trial.

46.     As a result of Defendant's infringement of the '710 Patent, TainoApp has suffered harm and monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

---

[8] http://www.usa.philips.com/c-p/SHB5800BK_27/bluetooth-nfc-in-ear-headphones, last visited April 4, 2017.
[9] https://www.download.p4c.philips.com/files/s/shb5800wt_00/shb5800wt_00_dfu_eng.pdf, last visited April 4, 2017.

47. TainoApp will continue to suffer harm and damages in the future unless Defendant's infringing activities are enjoined by this Court. As such, TainoApp is entitled to compensation for any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

## DEMAND FOR JURY TRIAL

48. TainoApp demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

TainoApp respectfully prays for the following relief:

49. That Defendant be adjudged to have infringed the Patents-In-Suit;

50. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly infringing and/or inducing direct infringement of the Patents-In-Suit;

51. An award of damages pursuant to 35 U.S.C. § 284 sufficient to compensate TainoApp for Defendant's past infringement and any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

52. An assessment of pre-judgment and post-judgment interests and costs against Defendant, together with an award of such interests and costs, in accordance with 35 U.S.C. § 284; and

53. That TainoApp be given such other and further relief as this Court may deem just and proper.

Dated: April 18, 2017

Respectfully submitted,

*/s/ Eugenio J. Torres-Oyola*
Eugenio J. Torres-Oyola
Ferraiuoli LLC
221 Plaza, 5th Floor
221 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: etorres@ferraiuoli.com

Jean G. Vidal Font
USDC No. 227811
Ferraiuoli LLC
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: jvidal@ferraiuoli.com

**ATTORNEYS FOR PLAINTIFF TAINOAPP, INC.**